IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NEBIYU BETESELASSIE and BETHLEHEM GELAW, | ) ) ) ) |
| *Plaintiffs,* | ) ) ) Case No. 2:21-cv-02153-KHV-TJJ |
| v. | ) ) |
| Porcelana Corona de Mexico, S.A. de C.V. formerly known as Sanitarios Lamosa S.A. de C.V. also known as Vortens, | ) ) ) ) |
| *Defendant* | ) |

## **MEMORANDUM AND ORDER**

This case is before the Court on two motions to compel—one filed by Plaintiffs (ECF No. 77) and one filed by Defendant (ECF No. 80). The Court finds the parties have conferred in an attempt to resolve the issues in dispute without Court action, as required by Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2. For the following reasons, Defendant's motion is granted and Plaintiffs' motion is granted in part and denied in part.

Standard of Review

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery. As amended, it provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not

1

be admissible in evidence to be discoverable.[1]

Considerations of both relevance and proportionality now govern the scope of discovery.[2] Relevance is still to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[3] Information still "need not be admissible in evidence to be discoverable."[4] The amendment deleted the "reasonably calculated to lead to the discovery of admissible evidence" phrase, however, because it was often misused to define the scope of discovery and had the potential to "swallow any other limitation."[5]

The consideration of proportionality is not new, as it has been part of the federal rules since 1983.[6] Moving the proportionality provisions to Rule 26 does not place on the party seeking discovery the burden of addressing all proportionality considerations. If a discovery dispute arises that requires court intervention, the parties' responsibilities remain the same as under the pre-amendment Rule.[7] In other words, when the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that

---

[1] Fed. R. Civ. P. 26(b)(1).

[2] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

[3] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[4] Fed. R. Civ. P. 26(b)(1).

[5] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

[6] *Id.*

[7] *Id.*

the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[8] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[9] Relevancy determinations are generally made on a case-by-case basis.[10]

"A party asserting an unduly burdensome objection to a discovery request has 'the burden to show facts justifying [its] objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome.'"[11] The objecting party must also show "the burden or expense is unreasonable in light of the benefits to be secured from the discovery."[12] Objections that discovery is unduly burdensome "must contain a factual basis for the claim, and the objecting party must usually provide 'an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.'"[13]

Defendant's Motion to Compel (ECF No. 80)

---

[8] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[9] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

[10] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

[11] *Stonebarger v. Union Pac. RR Co.*, No. 13-2137-JAR-TJJ, 2015 WL 64980, at *5 (D. Kan. Jan. 5, 2015) (quoting *Shoemake v. McCormick, Summers & Talarico II, LLC*, No. 10-2514-RDR, 2011 WL 5553652, at *3 (D. Kan. Nov. 15, 2011)).

[12] *Id.*

[13] *Id.*

Defendant's Motion to Compel addresses one item of discovery: documents from Plaintiffs' insurance adjuster, Minuteman Adjusters, which contain redacted amounts that were claimed and paid for property damage resulting from the broken toilet tank. Plaintiffs respond those numbers are not relevant because they are not ultimately admissible under the collateral source doctrine, and argue that Defendant hasn't made any effort to show that producing the numbers is reasonably calculated to lead to the discovery of admissible evidence.

Evidence need not be admissible to be relevant. Here, even if the redacted numbers are ultimately not admissible based on the collateral source doctrine, they are relevant on their face; Defendant may use those numbers to ask questions that could lead to a better understanding of the foundation of the damages Plaintiffs claim. They reasonably could lead to other evidence that could bear on Defendant's defenses or Defendant's challenges to Plaintiffs' damages. Plaintiffs have not met their burden to show a lack of relevance.

Moreover, the request is proportional to the needs of the case and imposes virtually no burden on Plaintiffs. The original documents contain the numbers; Plaintiffs redacted them. And to the extent Plaintiffs have raised concerns of confidentiality, the Protective Order (ECF No. 30) entered in this case should alleviate those concerns.

For these reasons, the Court overrules Plaintiffs' objections and orders Plaintiffs to produce, within 7 days of the date of this order, the unredacted version of the Minuteman Adjusters documents already produced in redacted form.

Plaintiffs' Motion to Compel (ECF No. 79)

Plaintiffs' motion raises additional discovery disputes between the parties. The first dispute the Court addresses is related to Defendant's motion.

*Interrogatory No. 10*

Interrogatory No. 10 asks, "To the extent you believe that the property damage to Plaintiffs' home caused by the crack in the toilet tank is less than what Plaintiffs have claimed and itemized, please identify which items and/or amounts you disagree with, and state the entire factual basis for your disagreement."[14] Defendant objected to this Interrogatory as an impermissible "blockbuster interrogatory" and represented that it will supplement if Plaintiffs cooperate and provide sufficient information from which to evaluate Plaintiffs' damages.

Because the Court has ordered Plaintiffs to provide the damages numbers that Defendant seeks, this objection may largely be moot. But to the extent Defendant's claim of a "blockbuster interrogatory" still remains, the Court disagrees with Defendant. A blockbuster interrogatory requires a party to state "each and every fact supporting all of the allegations . . . each person having knowledge of each fact and all documents purporting to support [each] Count."[15] Interrogatory 10 does not rise to this level. Within 7 days of service upon Defendant of the unredacted copies of the insurance documents, Defendant shall answer Interrogatory 10 based on the information it has to-date. Defendant's objection is overruled.

*Interrogatory No. 4*

Interrogatory No. 4 seeks information about the sale of the toilet tanks at issue. Defendant represents that it has provided all information in its possession, custody, or control that is responsive to this Interrogatory. Nevertheless, Defendant objected to the Interrogatory as

---

[14] ECF No. 78-3 at 7.

[15] *Hilt v. SFC Inc.*, 170 F.R.D. 182, 186 (D. Kan. 1997).

irrelevant, unduly burdensome, and not proportional to the needs of the case. In Defendant's response brief, Defendant neither withdrew nor defended its objection.

Because Defendant answered the Interrogatory and essentially abandoned its objections, the Court overrules the objections. If Defendant has additional information responsive to Interrogatory No. 4, Defendant shall produce it within 7 days of the date of this order.

*Request for Production No. 8*

Request for Production No. 8 requests the exhibits to two depositions—the depositions of Etienne Cardinal and Edelmiro Trevino. The Cardinal deposition had one exhibit, which was a specification for tank model # 3424. The Trevino deposition had twenty exhibits, seven of which have been produced. An eighth (the First Amended Notice of Corporate Deposition of Porcelana Corona de Mexico dated October 23, 2017) was given to Plaintiffs by way of copying the Court and Plaintiffs with the document in response to questions the Court sent via email to the parties. This leaves twelve Trevino exhibits and the single Cardinal exhibit that Defendant maintains are irrelevant. Plaintiffs' only argument in support of its motion to compel production of the exhibits is that the depositions were produced in full, and therefore the exhibits should be, too.

Defendant sent by email a list of the exhibits that have not been produced, which is not overly helpful to a determination of relevance. In any event, it appears to the Court that exhibits 13, 14, 15, and 16—all of which relate to model # 3464—are not facially relevant to this case, which relates to model # 3412. The same rationale applies to the one Cardinal exhibit, which relates to model # 3424. Likewise, exhibit 9 appears facially irrelevant, as it is titled "Inventory of Rejected Tanks March – July 2011," as well as the Production Reports for 2006 and 2011

(exhibit 11), whereas the model # 3412 at issue was manufactured in 2012.[16] Exhibit 2 is titled "Interpreter's Credentials" and also appears facially irrelevant. Defendant's objection to RFP No. 8 relating to these exhibits is sustained and these exhibits need not be produced. Plaintiff has not shown their relevance.

As for exhibits 1 ("Stipulation Regarding Federal Rule of Civil Procedure Corporate Deposition of Defendant"); 8 ("Northside Plumbing Shipment History"); 10 ("Email re: Northside Plumbing Returns PORCELANA002905-002907"); 12 (Distribution Reports for 2004–2012); and 19 ("Email re: Northside replacement tanks needed PORCELANA000080-000081"), the Court cannot readily ascertain whether they relate to model # 3412. Therefore, the exhibits also do not appear relevant on their face. Again, this places the burden on Plaintiffs, and Plaintiffs have not shown relevance—only arguing that because Defendant didn't object on relevance grounds to producing the entire Trevino deposition, all the exhibits to the deposition must be relevant. Plaintiffs' argument is insufficient and the Court therefore sustains Defendant's objections to exhibits 1, 8, 10, 12, and 19. Plaintiffs have not met their burden to show any of the Cardinal or Trevino deposition exhibits relevant.

*Privilege Log*

In response to Interrogatory No. 5 and Request for Production Nos. 7 and 21–24, Defendant represented it was withholding materials and information based on the attorney-client privilege, consulting expert privilege, and work product privilege. When further pressed by Plaintiffs, Defendant eventually produced a privilege log.

---

[16] Later in this order, the Court discusses how, with respect to model # 3412, it is not necessary that requested information and documents be limited to the year 2012. Here, however, there is no indication that these exhibits relate to model # 3412 at all.

The party withholding a document on the basis that it contains privileged communications has the burden of establishing the privilege.[17] The asserting party must make a "clear showing" that the objection applies by "describ[ing] in detail" the information sought to be protected and providing "precise reasons" for the objection to hold.[18] It is well settled in this district that an inadequate privilege log may result in waiver of the privilege.[19] The burden is typically satisfied through the inclusion of a privilege log with sufficient information.[20] The District of Kansas requires the following items be included:

> (1) A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.;
> (2) The date upon which the document was prepared;
> (3) The date of the document (if different from # 2);
> (4) The identity of the person(s) who prepared the document;
> (5) The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney;
> (6) The purpose of preparing the document, including an evidentiary showing, based on competent evidence, supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent; a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal advice; and a showing, again based on competent evidence, that the documents do not contain or incorporate non-privileged underlying facts;

---

[17] *Williams v. Sprint/United Mgmt. Co.*, 245 F.R.D. 660, 667 (D. Kan. 2007).

[18] *Id.* (citing *Ali v. Douglas Cable Comm., Ltd.*, 890 F. Supp. 993, 994 (D. Kan. 1995); *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 680 (D. Kan. 2000)).

[19] *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 671 (D. Kan. 2005) (citing *Emloyer's Reinsurance Corp. v. Clarendon Nat'l Ins. Co.*, 213 F.R.D. 422, 428 (D. Kan. 2003)).

[20] *Kannaday v. Ball*, 292 F.R.D. 640, 645 (D. Kan. 2013) (citation omitted).

        (7) The number of pages of the document;
        (8) The party's basis for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and
        (9) Any other pertinent information necessary to establish the elements of each asserted privilege.[21]

The privilege log Defendant produced is inadequate in several ways. There are lines that do not contain dates, the purpose of preparation, or the number of pages. No line includes a representation that the emails do not contain or incorporate any non-privileged underlying facts. Neither does any line contain a statement or an evidentiary showing that listed communications were made in the course of adversarial litigation, or that they relate to the giving/receiving of legal advice.

Defendant's privilege log is insufficient under the standards of the District of Kansas. Within 7 days of the date of this order, Defendant shall supplement its log to comply with this Court's requirements. Plaintiffs' motion is granted on the privilege log issue.

*Second Requests for Production Nos. 1–6 and 8–23*

Each of RFP Nos. 1–6 and 9–23[22] requests information relating to tank model # 3412. RFP Nos. 1–6 relate to promotional, advertising, and marketing materials for tank model # 3412. RFP Nos. 9–22 relate to communications regarding tank model # 3412, and RFP No. 23 relates to a voluntary replacement program. In response to these RFPs, Defendant asserted the same objection:

> Defendant objects to this Request because it is overly broad in scope, nature, and time and seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, the tank at issue is model # 3412

---

[21] *Id.*

[22] RFP No. 8 has been addressed *supra*.

>   manufactured in 2012 at the Benito Juarez plant, while this
>   Request seeks documents related to tanks manufactured in other
>   years at other plants.

Defendant also objected to some of these requests on additional bases, but this is the only objection addressed by the parties (unless separately referred to in this Memorandum and Order, such as privilege claims) and is therefore the only one addressed by the Court.

The heart of this dispute goes to whether Defendant must produce communications and other documents related to <u>all</u> tank model # 3412s, or whether Defendant must produce only responsive documents for model # 3412s manufactured in 2012 at the Benito Juarez plant (because the tank model that is the subject of this litigation was produced in 2012 at Benito Juarez). Defendant argues that production should be so limited because Plaintiffs bring a manufacturing defect claim, so only information about model # 3412 manufactured during the same time period, at the same plant, is relevant. Plaintiffs contend that Defendant is too limiting; Plaintiffs also bring claims under the Kansas Consumer Protection Act ("KCPA"). Plaintiffs' KCPA claims go to Defendant's notice of problems and how Defendant treated people who reached out to Defendant about their tanks. According to Plaintiffs, the key fact is that Defendant said (and reaffirmed on 7/24/19) that all # 3412s were being replaced, to justify why class certification was not necessary in the Texas case. Also, Plaintiffs observe Defendant suggests it would open up discovery to all different plants, but # 3412 was only manufactured at the Benito Juarez plant. Plaintiffs argue they need internal and external communications regarding the voluntary replacement program because whether the tanks were covered on 1/28/2019 is relevant to Plaintiffs' KCPA claims. Finally, Plaintiffs contend the requests regarding # 3412s are not

aimed at the manufacturing process; they seek information about communications to and from Defendant about # 3412s and the voluntary replacement program.

The Court agrees with Plaintiffs on this issue. There is evidence that Defendant said all # 3412 tanks would be replaced, and it was affirmed <u>after</u> Plaintiffs inquired about their tanks. Defendant's treatment of other # 3412 owners is relevant to whether it was willfully misrepresenting, acting unconscionably, or misleading Plaintiffs as consumers under the KCPA. Defendant's citation of manufacturing and/or design defect cases is inapposite.[23] And Defendant's claim that the voluntary replacement program ended before Plaintiffs requested replacement is controverted.[24] Plaintiffs' requests about Defendant's communications relating to all # 3412s and the voluntary replacement program are designed to elicit discovery of admissible information.

The Court finds Defendant's concerns about the requests being overbroad unpersuasive because Defendant has also acknowledged that model # 3412 was only produced at the Benito Juarez plant.[25] Plaintiffs' inquiries, therefore, do not require responses about model # 3412 at other plants.

---

[23] Defendant refers the Court to *McKellips v. Kumho Tires*, 305 F.R.D. 655, 666–71 (D. Kan. 2015) and *Bd. of Comm'rs of Shawnee Cty v. Daimler Trucks N. Am., LLC*, No. 15-4006-KHV, 2015 WL 8664202, at *3–*4 (D. Kan. Dec. 11, 2015) for the principle that products must be substantially similar among variables relevant to Plaintiffs' theory of defect. While these cases are relevant to Plaintiffs' manufacturing defect claim (which depends on how, when, and where the product was manufactured), their logic does not extend to KCPA claims (which relate to communications Defendant made regarding its product and whether it would be replaced).

[24] ECF No. 91 at 2–3 (citing testimony suggesting that the replacement program for all # 3412 models was in place after Plaintiff requested replacement).

[25] ECF No. 89 at 11–12 (citing Declaration of Etienne Cardinal).

There is one more element to Defendant's objection that the Court addresses briefly: the time frame for Plaintiffs' inquiry. The RFPs contain no time limitation. Defendant wants the time limited to those tanks produced in 2012, citing evidence showing "[t]he manufacturing processes involved in producing these tank models were not the same from day to day, and from year to year, from 2007–2014."[26]

Again, however, regardless of whether the manufacturing process remained the same, Defendant's communications to and from customers of # 3412 are a separate matter and do not pose the same limitations the manufacturing defect claims does. The Court does question whether seven years of communications and advertisements present an unnecessarily broad scope. But Defendant has not proffered reasons why production of responsive documents to these RFPs would be unduly burdensome or disproportionate to the needs of the case. Because the documents are relevant on their face, Defendant bears the burden and has not met it. Within 7 days of the date of this order, Defendant shall therefore produce documents responsive to Plaintiffs' Second Requests for Production Nos. 1–6 and 9–23.[27]

IT IS THEREFORE ORDERED that Defendant's Motion to Compel (ECF No. 80) is granted.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Compel (ECF No. 77) is granted and denied in part.

Dated June 17, 2022, at Kansas City, Kansas.

*Teresa J. James* (signature)
Teresa J. James
U.S. Magistrate Judge

---

[26] *Id.* at 7 & n.6 (citing Declaration of Etienne Cardinal).

[27] As previously noted, RFP No. 8 is addressed *supra.*